JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
ADAM P. SCHLEIFER (Cal. Bar No. 313818)
KEVIN B. REIDY (Cal. Bar No. 320583)
Assistant United States Attorneys
Corporate and Securities Fraud Strike Force/Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:    (213) 894-4849/8536
     Facsimile:    (213) 894-6269
     E-mail:       adam.schleifer@usdoj.gov; kevin.reidy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-00296-WLH |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ORDER CONTINUING PRETRIAL MOTIONS DEADLINE AND TRIAL DATE (DKT. 63)</u> |
| v. | |
| ANDREW A. WIEDERHORN, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Adam P. Schleifer and Kevin B. Reidy, hereby files its opposition to defendant's most recent motion for an order continuing the pretrial motions deadline and the trial date in this case (Dkt. 63).

//

//

The government's opposition is based upon the attached memorandum of points and authorities, the attached Declaration of Adam P. Schleifer and the exhibits thereto, the files and records in this case, and any additional evidence or argument that the Court may wish to consider at a hearing on this matter.

| | |
|---|---|
| Dated: March 14, 2025 | Respectfully submitted, |
| | JOSEPH T. MCNALLY<br>Acting United States Attorney |
| | LINSDEY GREER DOTSON<br>Assistant United States Attorney<br>Chief, Criminal Division |
| | *APS*<br>_____<br>ADAM P. SCHLEIFER<br>KEVIN B. REIDY<br>Assistant United States Attorneys |
| | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Again misframing the record and the law, and conflating this simple prosecution under 18 U.S.C. § 922(g) with his separate fraud prosecution in United States v. Wiederhorn et al., 24-cr-295-RGK (the "Fraud Case"), defendant seeks—for the fourth time (see Dkt. 42, 47, 53, 56, 60)—a continuance of the two-day trial in this case.  For reasons stated in the government's prior oppositions (Dkt. 46, 55, 61), as well as for the reasons further elaborated upon below, defendant's efforts to delay trial in this case should be denied.[1]

**II.  FACTUAL BACKGROUND AND RELEVANT CORRECTIONS TO RECORD**

As noted in prior briefing, federal agents recovered a Walther PPK handgun, ammunition, and firearm paraphernalia during the execution of warrants to search defendant's home and person and seize evidence of at least ten distinct federal fraud felonies.  (E.g., Dkt. Nos. 61 at 3 n.1; 46 at 7–9).  Because defendant had previously been convicted of two federal felonies, the government obtained an additional "rollback" warrant and seized the evidence of the crime charged in this case pursuant that separate warrant to search for and seize evidence of violations of 18 U.S.C. § 922(g).

At various points throughout the searches conducted at his home, defendant made multiple non-custodial, inculpatory statements concerning his knowledge and possession of the seized firearm, which was also registered to him.  This prosecution under 18 U.S.C. § 922(g) followed from those events and statements.

---

[1] Instead of burdening the Court with repetition of facts and law to which it has pointed in prior related oppositions (Dkt. 46, 55, 61), the government instead incorporates them here.

### A.   Defendant's Multiple Confessions

Defendant asserts that "the government has taken conflicting positions regarding when [defendant] was interrogated about the gun," characterizing as "true" the notion that defendant "was interrogated in his driveway while surrounded by agents" but as "false" the notion that defendant "was asked about the gun at his kitchen table." (E.g., Dkt. No. 63-1 at 4.)  As much as defendant might prefer otherwise,[2] however, this is not a matter of "either/or."  Defendant made <u>multiple</u> inculpatory statements at <u>multiple locations</u> in <u>multiple contexts</u> throughout the search of his residence.

First, and pursuant to standard law-enforcement safety protocols, and in light of defendant's known ownership of a German Shepherd guard dog, IRS special agents asked defendant "whether there were any additional people or dogs in the house and whether there were any firearms in the residence" soon after they made contact with defendant on the morning of December 1, 2021.  (Schleifer Decl. Ex. A.)  In response, defendant "stated there was one handgun . . . in the house . . . located in a container in his master bedroom closet." (<u>Id.</u>)  This first conversation regarding defendant's firearm took place in defendant's driveway, with Special Agents of the IRS maintaining contact with defendant and his family, while Special Agents of the FBI worked to clear and secure the residence itself. (<u>Id.</u>)[3]

---

[2] Presumably to characterize his statements "custodial" and "involuntary" under the Fifth Amendment.

[3] There were no firearms drawn nor any other coercion upon defendant when he volunteered these statements to IRS agents in his driveway.

2

Thereafter, in a separate discussion inside his home, defendant told agents, "there was a firearm in a box upstairs, located on the top shelf in a closet," and then, "in a subsequent discussion with [FBI Special Agent] McFadden, [defendant] identified [his] master closet [and] stated the firearm belonged to his son." (Schleifer Decl. Ex. B.) Still later, when accompanying FBI Special Agent McFadden to his closet to retrieve a watch before making his voluntary exit from the residence, defendant "confirmed the location of the firearm as . . . previously described, [and] stated the firearm belonged to [his] son." (Id.)

**B.    No Notes from Search Are Outstanding**

Related to defendant's melding of his multiple inculpatory statements is his equally baseless refrain that "the government has still not produced notes taken by agents during the search of [defendant's] home," which defendant claims "continues to prevent . . . counsel from preparing motions supporting his defense." (Dkt. 63-1 at 8.) As it has already proffered to the Court in its opposition to one of defendant's prior applications to continue his trial (Dkt. 61 at 5), the government does not believe any unproduced notes "taken by agents during the search of [defendant's] home" exist.[4]

---

[4] Although it has voluntarily exceeded its discovery obligations in producing prior sets of notes to defendant, the government does not concede that defendant is entitled to production of all notes as such. See, e.g., United States v. Reed, 575 F.3d 900, 920-22 (9th Cir. 2009); United States v. Griffin, 659 F.2d 932, 940 (9th Cir. 1981).

3

**C.  All Seized Evidence from Defendant's Son's Digital Devices Has Been Produced**

The government has produced all evidence seized from digital devices taken from and owned by defendant's son.[5]  Nevertheless, defendant complains, "the government has still not produced any discovery from 9 of the 11 devices it seized from Thayer Wiederhorn—Mr. Wiederhorn's son, who told agents that the gun at issue was his."[6]  Because no evidence was seized from these devices, there is no discovery to produce.  Nevertheless, complete forensic copies of these devices have been made available to the owner of these devices, defendant's son.

**D.  IRS Discovery Has Been Produced**

Defendant continues wrongly to assert that "much" from IRS's files "remains outstanding."  The government has produced the IRS discovery of which it is aware, and defendant's insistence that there should be more cannot predicate an entitlement to that which does not exist, nor should it predicate a continuance of this trial of his violation of § 922(g).

---

[5] There may be other communications—subject to a privilege-review process agreed to by defendant—that have not been released to the prosecution team, but the government has no reason to believe any such communications (which would be subject to a claim of privilege by defendant's <u>son</u>) have any relationship to or bearing upon this case.

[6] Once again, and to say nothing of the bevy of ammunition and gun-related paraphernalia recovered from defendant's home, the firearm recovered had long been registered to defendant.  Even were defendant and his son correct, however, that defendant had at some point transferred <u>ownership</u> of that firearm to his son, this remains a non-sequitur; defendant has been charged with a violation of 18 U.S.C. § 922(g), which criminalizes the knowing "possess[ion]," <u>not ownership</u> of a firearm and ammunition by felons.

4

For example, defendant's claim that "the government has not produced . . . Mr. Wiederhorn's Form 1040 for the years 2016–2020 is incorrect; those filings have been produced. (Schleifer Decl. ¶ 2.)

The government has also exceeded its discovery obligations in defendant's Fraud Case by producing certain IRS "meta-records," <u>i.e.</u>, records of its searches and non-possession of certain documents, in <u>multiple formats</u> in an effort to accommodate defendant and speed his review. (Schleifer Decl. ¶ 3.)

**E. There is No "Forged IRS Document"**

Defendant breezily asserts the warrant obtained in defendant's Fraud Case relied upon "an obviously forged IRS document." As irrelevant as this allegation is to this prosecution under § 922(g),[7] it is also totally untrue. For evidence of supposedly nefarious forgery, defendant points to the obvious fact that both defendant's 2016 and 2018 Forms 433-A contain the handwritten emendation, "in process." (<u>Compare</u> Dkt. No. 47-4 at 2 <u>with</u> Dkt. No. 47-5 at 2; <u>see also</u> Dkt. No. 63-1 at 19.) Defendant seems to miss that the government <u>agrees</u> the 2018 Form 433-A defendant submitted to the IRS began as a photocopy of the 2016 Form 433-A, complete with that identical emendation of "in process." In fact, defendant's submission of a duplicated form, which <u>he re-dated</u> and <u>resubmitted</u> to the IRS on June 12, 2018 (Dkt. No. 47-5 at 5), was criminally fraudulent in part <u>because</u>, by copying and resubmitting a form from two years prior, he represented that his asset picture in 2018 was

---

[7] Even were this bizarre claim true, defendant could not invalidate even the fraud-case warrant or reliance upon the same by establishing merely that an FBI affiant relying upon thousands of inculpatory documents also relied upon a single invalid IRS document. The authenticity of defendant's submissions to the IRS are therefore a matter to be tried in his Fraud Case, not this one.

5

identical to the picture in 2016 (both forms fraudulently omitted assets and liabilities). Anyway, defendant's suggestion that the forms are identical is further belied by the "(Foreclose)" emendation on page 3 of <u>only</u> the 2018 Form 433-A, putting the lie to his suggestion that the forms are entirely identical. (Dkt. No. 47-5 at 4.)

### F. This Court Denied a Continuance of Defendant's Trial in 2:24-cr-295-RGK

In a multidefendant case, designated as complex, and alleging that defendant committed at least six species of fraud across a twenty-two-count indictment, this Court recently denied——finding "[n]o good cause shown"——a continuance of defendant's October 28, 2025, trial. (Dkt. No. 61-1 at 14.)

## III. Argument

### A. <u>Duarte</u> is No Basis for Further Continuances

As noted previously (<u>e.g.</u>, Dkt. No. 61 at 4-5; No. 55 at 7), <u>Duarte</u> is not a proper basis for a further continuance in this case. The law does not recognize a right to delay trial and flout the public interest in speedy trials merely because there's some chance that a case pending on appeal may (or may not) bear upon aspects of that trial. <u>E.g.</u>, <u>Cobbledick v. United States</u>, 309 U.S. 323, 325-26 (1940). Instead, defendant must file whatever non-frivolous pretrial motions he deems available according to the existing schedule, and, if those motions and trial defenses fail, to "await his conviction before its reconsideration by an appellate tribunal." <u>Id.</u> An interruption of a criminal trial to await appellate guidance on trial court rulings, even "orders [that] would have led to dismissal of all or some charges," "exacts a presumptively prohibitive price" on the

administration of criminal justice.  Flanagan v. United States, 465 U.S. 259, 269-70 (1984).

Moreover, defendant again confuses the timing of his pretrial motions with the question whether he will make them at all.  In fact, and no matter the outcome in Duarte, defendant will claim that application of section 922(g) as to him, a two-time nonviolent felon, violates the Second Amendment to the Constitution.

**B.  Denial of a Continuance Here Follows A Fortiori from Denial of the Same in the Fraud Case**

The regrettable loss of two of defendant's attorneys' homes in the fires of January 7, 2025, does not render his large and sophisticated defense team unable adequately to represent him at a two or three-day trial four months from now.  A ruling denying this claim here follows a fortiori from this Court's recent ruling that the same circumstance failed to establish the requisite cause for a continuance of the one or two-month complex fraud trial in United States v. Wiederhorn et al., 2:24-cr-295-RGK (denying defendant's unopposed application to continue that trial).  (Dkt. No. 61-1 at 14.)

**C.  Defendant's Baseless Discovery Allegations Fail to Establish Cause to Continue this Trial**

As noted, supra, defendant's allegations concerning discovery are simply false as well as irrelevant.  Defendant also baselessly implies a right to receive items that far exceeds the compass of criminal discovery.

The government has already exceeded its discovery obligations in this case and the Fraud Case, including by voluntarily producing notes of interviews for which final reports existed, see, e.g.,

7

1  United States v. Reed, 575 F.3d 900, 920-22 (9th Cir. 2009); United
2  States v. Griffin, 659 F.2d 932, 940 (9th Cir. 1981).
3       Similarly, defendant wrongfully assumes entitlement not merely
4  to evidence seized pursuant to a search warrant, but instead the
5  entirety of someone else's (his son's) digital devices.[8]  Defendant
6  has no entitlement to those digital devices, however.  E.g., United
7  States v. Collins, 409 F. Supp. 3d 228, 244 (S.D.N.Y. 2019); United
8  States v. Salyer, 271 F.R.D. 148, 165-66 (E.D. Cal. 2010).
9       As noted previously, moreover, defendant's suggestions that
10 sundry discovery concerning his fraud case could somehow affect the
11 framing or outcome of a Franks motion in this case is dubious at
12 best.  Beyond ravings concerning an "obvious" IRS "forgery" and hand-
13 wave generalities levied against the warrants obtained in both cases,
14 defendant has failed to articulate a theory of how any such discovery
15 (which has been produced) could contribute to, let alone establish,
16 the showing necessary either for a Franks hearing or the suppression
17 of evidence.  See, e.g., United States v. Carpenter, 2010 WL 1154073,
18 at **3-7 (C.D. Cal. Jan. 13, 2010); see also United States v. Andujo,
19 No. CR 18-00835-DSF, 2019 WL 4195886, (C.D. Cal. Sept. 4, 2019).
20 **IV.  Conclusion**
21      Defendant's motion should be denied.

---

[8] Again, forensic copies of those devices have been made available to defendant's son, who is free to share or not share the same with defendant.

8