GIBSON, DUNN & CRUTCHER LLP
DOUGLAS FUCHS, SBN 196371
    DFuchs@gibsondunn.com
NICOLA HANNA, SBN 130694
    NHanna@gibsondunn.com
DANIEL NOWICKI, SBN 304716
    DNowicki@gibsondunn.com
JIMMY ROTSTEIN, SBN 305072
    JRotstein@gibsondunn.com
RAYCHEL TEASDALE, SBN 335034
    RTeasdale@gibsondunn.com
BRENNA GIBBS, SBN 342388
    BGibbs@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071
Telephone:  213.229.7000
Facsimile:   213.229.7520

*Attorneys for Defendant*
*Andrew A. Wiederhorn*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW A. WIEDERHORN,<br><br>Defendant. | CASE NO. 2:24-CR-00296-WLH<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR ORDER CONTINUING PRETRIAL MOTIONS DEADLINE AND TRIAL DATE**<br><br>**Indictment Filed**: May 9, 2024<br>**Pretrial Conference**: July 3, 2025<br>**Trial**: July 15, 2025<br>**Speedy Trial Date**: December 24, 2025<br>**Hearing Date**: April 4, 2025<br>**Hearing Time**: 9:30 a.m.<br>**Dept**: Courtroom 9B<br>**Judge**: Honorable Wesley L. Hsu |

# TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| RESPONSE TO GOVERNMENT'S FACTUAL BACKGROUND | 3 |
| ARGUMENT | 5 |
|     A. Failing to Grant a Continuance Would Be a "Miscarriage of Justice" | 5 |
|     B. This Case Presents "Novel Questions … of Law" and is "Unusual" and "Complex" | 6 |
|     C. A Continuance is Required for "Reasonable Time Necessary for Effective Preparation" | 7 |
| CONCLUSION | 10 |

**INTRODUCTION**

This Court previously granted a continuance in this case. Each of the grounds supporting that continuance are still present and are now compounded by the unprecedented devastation caused by the recent wildfires in Los Angeles.

***First***, a continuance is warranted to allow the parties and the Court to benefit from the *en banc* Ninth Circuit's ruling in *Duarte* on the constitutionality of 922(g)(1).

***Second***, this case is unusually complex and requires defense counsel to prepare several lengthy and fact-dependent pretrial motions.

***Third***, despite charging Mr. Wiederhorn more than ten months ago, the government still has not produced all relevant discovery. Specifically, Mr. Wiederhorn has not received critical IRS discovery and has not been able to review documents from nine of the eleven devices seized from Mr. Wiederhorn's son, Thayer Wiederhorn (the owner of the gun).

***Fourth***, the government produced more than 2.9 million pages of discovery between this case and the fraud case. And on March 13, just before it filed its opposition to this motion, the government provided four terabytes of data from Thayer Wiederhorn's devices to Thayer, and on March 14, produced 11,600 pages of discovery to Mr. Wiederhorn. Fuchs Decl., ¶¶ 2–3. Counsel needs additional time to review the delayed discovery and prepare pretrial motions.

***Fifth***, two core members of the defense team have been affected by the Palisades and Eaton fires. Douglas Fuchs lost his home in the Palisades Fire, as well as much of his hard copy work product for this case. Daniel Nowicki's home suffered smoke and ash damage, and he will not be able to return until it undergoes extensive remediation, which will likely take years. Counsel needs additional time to recover following this tragedy and provide Mr. Wiederhorn the defense to which he is entitled.

The government does not meaningfully dispute any of these grounds. Instead, it spends most of its opposition arguing the merits of Mr. Wiederhorn's unbriefed pretrial motions. *See infra* at 4–6. These arguments are improper and premature—the question

at this stage is not *whether* Mr. Wiederhorn will prevail on his pretrial motions, but rather whether Mr. Wiederhorn needs additional time to prepare the pretrial motions. And he does need additional time, in part because the government has severely delayed production of discovery in this case.

The government also argues a denial of a continuance in this case "follows *a fortiori*" from Judge Klausner's denial of a continuance in the fraud case. Dkt. 64 ("Opp.") at 7. But the *ex parte* request to continue in the fraud case was not made on the same grounds as Mr. Wiederhorn's request here. For instance, the fraud case does not involve a novel and undecided question of constitutional law in which the *en banc* Ninth Circuit agreed to provide guidance. Further, Mr. Wiederhorn disagrees with Judge Klausner's ruling, which merely stated there was "no good cause shown." Judge Klausner's ruling is not binding upon this Court, and this Court should not compound the prejudice caused by that ruling.

Last, the government claims it produced all the discovery "of which it is aware." Opp. 4. But IRS discovery remains outstanding, and Mr. Wiederhorn has not been able to review the contents of Thayer's devices. *See infra* at 8–10. And regardless, the government's representation cannot be given weight because it has made **several** misstatements to this Court regarding the status of outstanding discovery. In its October 15, 2024 opposition to Mr. Wiederhorn's application to continue, the government unequivocally stated no additional agent notes from the search existed. Dkt. 55 at 7. But on February 12, 2025, the government produced handwritten notes from an IRS agent corresponding to a conversation with Mr. Wiederhorn the morning of the search. Dkt. 63-2 ¶ 7. Also in its October 2024 opposition, the government stated it would be "producing the entire contents of [Thayer's] devices to defendant in the coming days." Dkt. 55 at 7. But this did not happen. The government only just produced four terabytes of data from the remaining nine devices to Thayer on March 13—the day before filing its opposition to this Motion.

The Court should exercise its discretion pursuant to 18 U.S.C. § 3161(h) and grant

Mr. Wiederhorn's requested continuance.

### RESPONSE TO GOVERNMENT'S FACTUAL BACKGROUND

The government devotes much of its opposition to purported "corrections to the record." Opp. 1–6. Many of these issues likely need to be litigated in evidentiary hearings. But regardless, the government gets it all wrong.

First, the government claims Mr. Wiederhorn made "multiple non-custodial, inculpatory statements" the morning of the search. Opp. 1. This issue need not—and should not—be litigated in this motion. Mr. Wiederhorn only provides background to demonstrate that the prosecution is not forthcoming, and this case is not straightforward.

The government states that "[t]here were no firearms drawn nor any other coercion upon defendant" when Mr. Wiederhorn made statements about the gun. Opp. 2 n.3. Whether there was "coercion upon" Mr. Wiederhorn when he made his statements is a legal conclusion that only this Court can determine. But security footage taken the morning of the search shows that nearly three dozen agents arrived with assault rifles drawn. It clearly was an intimidating and coercive environment, and there is no requirement guns be drawn at the precise time of questioning for an interrogation to be "custodial." *See U.S. v. Craighead*, 539 F.3d 1073, 1084 (9th Cir. 2008) (providing four-factor test for custodial interrogation, none requiring guns be drawn).



Gibson, Dunn & Crutcher LLP

Further, the government's story that Mr. Wiederhorn was interrogated twice about the gun—once in the driveway and once about thirty minutes later in his dining room—is false and nonsensical. Opp. 2–3. To support the second conversation, the government cites an FBI 302 drafted by Special Agent Corey McFadden. Dkt. 64-1, Ex. B. However, this 302 does not even say there were two conversations—it *only* references the supposed dining room conversation. Further, the search warrant affidavit—that was also sworn out by McFadden—mentions **nothing** about a second, dining room conversation. McFadden's affidavit says "[w]ithin minutes of gaining entry into the gated driveway … agents including SA Dan Dreyer of the IRS … asked WIEDERHORN standard questions … including whether WIEDERHORN knew of any firearms present inside the premises." Dkt. 47-3, Ex. 2. If this second conversation indeed happened (it did not), there is no reason why it would not have been included in McFadden's sworn search warrant affidavit.[1] In fact, **no** government report reflects the supposed two interrogations with Mr. Wiederhorn regarding firearms.

Second, the government states there is "no 'forged IRS document.'" Opp. 5.[2] But again, whether the document is forged is an issue the Court should not decide in Mr. Wiederhorn's motion to continue. However, the government is wrong. The government

---

[1] And even if there was a second conversation, that does not somehow make the interrogation noncustodial.

[2] That the government now agrees the 2018 Form is a photocopy is rich, given it was Mr. Wiederhorn's counsel who informed the government the document was a photocopy, and the government initially rejected counsel's assertion.

now claims *Mr. Wiederhorn* provided the forged 2018 Form 433-A to IRS Revenue Officer Anna Quach on June 12, 2018, (Opp. 5), but that is belied by Quach's own false statement to the government that Mr. Wiederhorn's *tax attorney* provided her with the 2018 Form 433-A (Fuchs Decl., ¶ 4). And both the government's and Ms. Quach's inconsistent and incorrect statements are refuted by Mr. Wiederhorn's tax attorney's and his paralegal's sworn statements that they did not provide and did not review with Ms. Quach a Form 433-A during the June 2018 meeting (and certainly not a photocopied version). *Id.* Each stated the purpose of the meeting was instead to provide Ms. Quach with $500,000 toward Mr. Wiederhorn's back taxes (a critical fact omitted from Ms. Quach's interview memorandum). *Id.*

Further, the forged IRS document is not "irrelevant" to this case as the government claims—it is a key document relied upon in the search warrant. And whether reliance on a forged 433-A Form can help undercut the finding of probable cause in the search warrant is a legal question this Court must decide another time. Plus, there are many other issues with the search warrant that will be raised in a *Franks* motion.

## ARGUMENT

A court has broad discretion to grant continuances. *See U.S. v. Garrett*, 179 F.3d 1143, 1145 (9th Cir. 1999). An "ends of justice" continuance is warranted when one or more of the "enumerated factors" in 18 U.S.C. § 3161(h)(7)(B)(i)–(iv) are present. *U.S. v. Orozco-Barron*, 72 F.4th 945, 947–48 (9th Cir. 2023). Here, a continuance is warranted under three enumerated factors.

**A. Failing to Grant a Continuance Would Be a "Miscarriage of Justice"**

As the Court is well aware, the *en banc* Ninth Circuit has agreed to resolve the constitutionality of 922(g)(1) in *Duarte*, and as Mr. Wiederhorn explained at length previously, there is a growing number of Circuit and District courts finding 922(g)(1) is unconstitutional as applied to non-violent defendants like Mr. Wiederhorn. *See* Dkts. 42-1 at 14–16; 47 at 7–9; 48-1; 49-1; 63-1 at 9.

The government does not dispute that *Duarte* is likely to control the outcome of this case. Instead, it argues that "[t]he law does not recognize a right to delay trial and flout the public interest in speedy trials merely because there's some chance that a case pending on appeal may (or may not) bear upon aspects of that trial." Opp. 6. However, the government made this same objection in its prior opposition to Mr. Wiederhorn's *ex parte* to continue (Dkt. 55 at 5–6), and this Court rejected it (Dkt. 57 at 2). Other courts have done the same. *See e.g.*, *U.S. v. Johnson*, 2024 WL 4728978, at *1 (E.D. Cal. Nov. 8, 2024) ("[T]he court finds proceeding to trial without allowing time for the circuit court to issue its [*Duarte*] decision on novel questions of law would be a miscarriage of justice under the Act's enumerated factors."); *U.S. v. Baker*, 2023 WL 8487873, at *1 (W.D. Okla. Dec. 7, 2023).

The government also again cites *Cobbledick v. U.S.*, 309 U.S. 323 (1940), (Opp. 6; Dkt. 55 at 5), but *Cobbledick* only held there is no statutory right to an interlocutory appeal from a denial of a motion to quash a subpoena. *Id.* at 325–26. And the government's continued reliance on *Flanagan v. U.S.*, 465 U.S. 259 (1984), (Opp. 7; Dkt. 55 at 5), is similarly misplaced. *Flanagan* decided whether an order disqualifying defense counsel was immediately appealable. *Id.* at 260. This Court has already rejected the application of *Cobbledick* and *Flanagan* to this case.

The government is correct that no matter the outcome in *Duarte*, Mr. Wiederhorn will move to dismiss his charge. Opp. 7. But Mr. Wiederhorn has consistently (and sensibly) argued that the parties and this Court should have the benefit of the *en banc* Ninth Circuit's forthcoming guidance in *Duarte* in evaluating his motion to dismiss. Dkt. 63-1 ("Mot.") at 10.

Given the unresolved constitutional question, failing to continue these proceedings will result in a "miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i).

**B.     This Case Presents "Novel Questions … of Law" and is "Unusual" and "Complex"**

The constitutionality of 922(g)(1) as applied to people like Mr. Wiederhorn is

novel and unsettled in this Circuit post-*Bruen*. As the court in *Johnson* held, the constitutionality of a gun prosecution is a "novel question of law" that can support a continuance under § 3161(h)(7)(B)(ii). *See Johnson*, 2024 WL 4728978, at *1. And as this Court previously recognized (Dkt. 57 at 3), until an opinion in *Duarte* is issued, defense counsel cannot sufficiently advise Mr. Wiederhorn of a defense strategy. The government does not (and cannot) refute this argument.

Further, "trial courts may grant excludable continuances to allow defense counsel to prepare motions," (*U.S. v. Henderson*, 746 F.2d 619, 624 (9th Cir. 1984)), and the "nature and volume of the evidence and legal issues in play" can be grounds for a continuance, (*U.S. v. Johnson*, 2022 WL 228974, at *2 (E.D. Cal. Jan. 26, 2022)). Mr. Wiederhorn intends to bring several complex pretrial motions. *See* Mot. 11–12. And defense counsel must review nearly three million pages of discovery (plus the discovery the government has not produced yet) before preparing these motions.

Accordingly, a continuance is warranted pursuant to § 3161(h)(7)(B)(ii) because of the unusually complex nature of this prosecution.

### C. A Continuance is Required for "Reasonable Time Necessary for Effective Preparation"

Mr. Wiederhorn needs additional time to prepare pretrial motions and for trial because his counsel must (a) receive and review all outstanding discovery from the government; (b) review the nearly three million pages of discovery that has been produced; and (c) prepare multiple complex pretrial motions. Mot. 11–16. Further, two senior members of the defense team have been severely impacted by the Palisades and Eaton fires and have lost their homes and hard copy work product for this case. Dkt. 63-2 ¶¶ 2–6.

As to the outstanding discovery, the government claims it "has produced the IRS

discovery of which it is aware," but the following remains outstanding:[3]

- Mr. Wiederhorn's complete IRS collection file, which includes the original copies of the 433-As submitted in 2016;
- Chain-of-custody documents for the collection files for Mr. Wiederhorn, BC Canyon LLC, BFCI Palm Desert LLC, Buffalos Café Palmdale LLC, FB Palm Desert LLC, Fog Cap Development, Fog Cutter Capital Group, and Fatburger Restaurant of New Jersey;
- Collection files for BC Canyon LLC, Buffalos Café Palmdale LLC, Fog Cap Development, Fatburger Restaurant of New Jersey, and Fatburger Corporation;
- Trust Fund Recovery Penalty Files for FB Palm Desert LLC, Fog Cutter Capital Group, Fatburger Restaurant of New Jersey, and Fatburger Corporation;
- IRS ICS History sheets for Buffalos Café; and
- IRS Office Communications Server history for Anna Quach, Group Manager Laura Stayer, and Acting Group Manager John Ejimofor.[4]

The government has provided no information on the anticipated production dates of these documents. Fuchs Decl., ¶ 5. This discovery is critical to Mr. Wiederhorn's *Franks* motion because the search warrant relies heavily on information from the Form 433-As and other representations made to the IRS, all of which should be in the collection files the government has failed to produce. The outstanding discovery is thus necessary to determine what Mr. Wiederhorn and his representative actually provided to the IRS.

---

[3] The government's statement that it has "exceeded its discovery obligations" by producing certain IRS "meta-records" is irrelevant and misleading. Opp. 5. Many of these meta-records do not explain what happened to certain files.

[4] While the government has produced communication that "closed casefiles" were not found or destroyed for all the listed entities except for Fog Cap Development and FB Palm Desert LLC, it is unclear what the "closed casefiles" contained, including whether they related to the collection file or the Trust Fund Recovery Penalty file.

Mr. Wiederhorn also has not been able to review the contents of Thayer's devices (the owner of the gun at issue). After stating in October 2024 it would produce all contents from Thayer's devices "in the coming days," the government now states for the first time that "[b]ecause no evidence was seized from these devices, there is no discovery to produce." Opp. 4. This makes no sense. The 11 devices seized during the search of Thayer's house are "evidence." To add to the government's gamesmanship, on March 13, 2025—one day before its opposition was filed here—the government informed Thayer's counsel that a four-terabyte hard drive containing the forensic imaging of all of Thayer's devices was available for pickup. Fuchs Decl., ¶ 2.[5] It will be months before Mr. Wiederhorn's counsel is able to upload and review the four terabytes of data from these devices. *Id.*

As to agent notes, after claiming no additional notes exist but then producing additional notes, (*see supra* at 3), the government now artfully states it "does not believe any unproduced notes 'taken by agents during the search'" are outstanding. Opp. 3. Defense counsel has repeatedly asked the government to confirm all agents have completed their search for notes, but the government has yet to provide this assurance. Instead, it states it "does not believe" any additional notes exist. This hedge is insufficient.

With regard to outstanding discovery, the government argues that "defendant has failed to articulate a theory of how any such discovery … could contribute to, let alone establish, the showing necessary either for a *Franks* hearing or the suppression of evidence." Opp. 8. But this is not the standard. Defendants do not need to demonstrate how discovery will allow them to succeed on pretrial motions before they receive such discovery.

The government also continues to argue that Mr. Wiederhorn "conflat[es]" this case with the fraud case. Opp. 1. But Mr. Wiederhorn has explained numerous times that these cases *are* intertwined. Mot. 15. The gun at issue was found when agents

---

[5] Mr. Wiederhorn's counsel had to contact Thayer's counsel to learn this information.

executed a search warrant of Mr. Wiederhorn's home based on allegations he had engaged in fraud. *Id.* Thus, evidence produced in the fraud case is critical to undercutting the validity of the search warrant. If the search warrant is invalid, the gun must be suppressed.

Mr. Wiederhorn's motion cited numerous examples of courts granting continuances because the government's delay in producing discovery, as well as the "voluminous" nature of the discovery, warranted additional preparation time. *See* Mot. 17–18 (citing cases). The government does not address these cases.

Thus, at a minimum, a continuance is warranted to permit defense counsel the reasonable time necessary for "effective preparation." 18 U.S.C. § 3161(h)(7)(B)(iv).

## CONCLUSION

For these reasons, the Court should grant Mr. Wiederhorn's motion.

DATED: March 21, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Douglas Fuchs*
     Douglas Fuchs

*Attorney for Defendant*
*Andrew A. Wiederhorn*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Andrew A. Wiederhorn, certifies that this brief contains 2,956 words, which complies with the Court's May 23, 2024 Standing Order entered at ECF No. 21.

DATED: March 21, 2025

By: */s/ Douglas Fuchs*
Douglas Fuchs

*Attorney for Defendant Andrew A. Wiederhorn*

Gibson, Dunn & Crutcher LLP